## MECHANICS' INSTITUTE v. FIRTH et al.*

### S. F. No. 588; June 23, 1897.

#### 49 Pac. 214.

**Treasurer's Bond.**—In an Emergency to Meet a Pay-roll of $1,878, a corporation's treasurer obtained $600 of its funds from one of its officers, and paid it to the secretary, the disbursing agent, receiving his receipt therefor, and its president paid $600 of his own money direct to the same agent. Subsequently the board of directors, upon the account of the pay-roll, ordered warrants drawn for a check of $600 to repay the president, and one of $1,273 for cash, which warrants were presented by the secretary, and were honored by the treasurer, as he was in duty bound to do. In the books the treasurer charged himself with the $600 received from the officer, and credited himself with the amount disbursed on the pay-roll. He did not charge himself with the money received from the president, which did not come into his hands, but credited himself with the check of $600, to repay the president, and the check of $1,278. Held, not to show any shortage on the part of the treasurer.

APPEAL from Superior Court, City and County of San Francisco; John Hunt, Judge.

Suit by Mechanics' Institute, a corporation, against J. K. Firth and others. From a judgment for defendants, plaintiff appeals. Affirmed.

T. M. Osmont and Eli T. Sheppard for appellant; E. F. Preston and W. F. Gibson for respondents.

---

*Rehearing denied.

HENSHAW, J.—These appeals are from the judgment, and from the order denying plaintiff a new trial. Defendant Firth was the treasurer of the corporation plaintiff. The defendants Fretwell and Kerr are his bondsmen. Plaintiff sued to recover the sum of $600, alleged to have been misappropriated. The facts disclosed upon the trial were as follows: The moneys of the plaintiff corporation were deposited in a bank, and were paid out by treasurer's checks upon presentation to him by the secretary of warrants ordered drawn by the board of directors.' J. H. Culver was the secretary of the plaintiff, and its business or executive manager. In January, 1893, the plaintiff corporation was engaged in preparing for the twenty-seventh industrial exposition of the institute. Repairs were in progress at the Mechanics' Pavilion. Upon Saturday, January 7, 1893, it became necessary to pay the workmen. The pay-roll amounted to $1,878.20, the payment of about $1,200 of which was urgent. No warrants had been ordered drawn by the directors to meet this payment, and it was after banking hours when the secretary, Culver, communicated with the treasurer, asking him to procure what money he could, and bring it to the pavilion. The Mechanics' Institute Library was owned and conducted by plaintiff corporation, and its moneys were a part of plaintiff's funds. The treasurer went to the librarian, and obtained from him the sum of $600, giving him his receipt therefor. This money he carried to the Mechanics' Pavilion, delivered it to the proper agent of the corporation, and took Culver's receipt therefor. There is no question but that this sum was properly disbursed upon account of the pay-roll. The president of the institute was Irwin C. Stump. In the emergency he also had been called upon to furnish money, and he, too, delivered to the agent of the corporation a like sum of $600, which was properly disbursed. This money, however, did not pass into nor through the hands of the treasurer. When the board of directors subsequently met, they ordered two warrants drawn upon their treasurer upon account of the pay-roll—the one for $600, to repay Stump, the other for $1,278.20. These demands were presented by Culver to the treasurer, and he, in obedience to them, as was his duty, drew his treasurer's check for $600 for Stump, and a check for $1,278.20 payable to cash. These two checks he delivered to Culver, taking his receipts therefor. Stump in due time re-

ceived his money, and no question arises upon this point. The treasurer charged himself upon his books with the $600 obtained by him from the librarian, by crediting it as a cash payment into the library fund, and credited himself with its disbursement upon account of the pay-roll, for which disbursement he held as a voucher the receipt of the secretary, Culver. He also charged the institute with the disbursement of the $600 evidenced by the Stump check, and of the $1,278.20 evidenced by his check, payable to cash, and taken by Culver, whose receipts for both of these amounts, as well as the warrants ordering him to pay them, form his vouchers therefor. He did not, however, charge himself with the receipt of the Stump $600.

The very obvious result of these transactions is that, having a pay-roll of $1,878.20 to meet, the institute paid $600 of the sum out of its own funds, to wit, out of the moneys received from the librarian, thus leaving to be met by it the sum of $1,278.20. When, however, it came to order its warrants drawn, it ordered for the full amount of $1,878.20. Thus, in fact, it disbursed upon account of the pay-roll the sum of $2,478.20. Leaving aside for the moment the question of bookkeeping, and tracing the money through the vouchers, it is equally apparent that the treasurer shows that he has properly expended and accounted for the $600 obtained from the librarian, and he also shows by vouchers whose genuineness is uncontested that the $600 Stump check and the check to cash for $1,278.20 passed from his hands under order of the board of directors, and into the hands of the secretary, Culver. In short, the treasurer's books show that every dollar by him received was paid out upon the order of the board of directors, saving in one instance of the $600 obtained from the librarian, the account of which was properly entered in his books, and the disposition of which is beyond question. But it is said that in failing to charge himself with the receipt of the Stump $600, and in charging its disbursement to the institute, he forced a balance in his favor to that amount. But, in fact, he never did receive the money. It never passed into the treasury of the corporation, and he was not chargeable with it. To illustrate: If the institute at the time of this transaction had possessed funds in the sum of $3,000, and if Stump upon that day had paid all of the pay-roll, and if it was the treas-

urer's duty to charge himself with the Stump payment, as though it had been moneys received by him, the result would be that to the credit of the institute would be shown funds to the amount of $4,878.20, against which would be the single disbursement by payment to Stump of $1,878.20, leaving actual cash on hand the sum of $1,121.80, with the books showing $3,000 on hand, and the treasurer liable for the difference. The truth of the matter seems to be that the directors, instead of ordering the $1,278.20 warrant drawn, should have ordered a warrant drawn for $678.20; but, having ordered it for the greater amount, it was the unquestioned duty of the treasurer to honor it as he did, and there is no doubt but that the check passed into the hands of the secretary, Culver, and by him was cashed. For this deficiency, then, it would seem clear that he, and not the treasurer, is accountable. Indeed, this was the view first taken by all parties, for, upon an examination of the books at the close of the term, it was determined that Culver was responsible for $600, and a demand was made upon him for that amount, and he paid it to the plaintiff. Twenty-two months after, with a new board of directors and another examination of the books, the examiner reached the conclusion that the treasurer was responsible for the shortage, and, by vote of the board of directors, the $600 was restored to Culver, a demand for that sum made upon the ex-treasurer, and, upon his refusal to accede to it, this action was commenced. It may also be added that plaintiff's experts do not pretend to trace the $600 as money, but merely find that it was the duty of the treasurer to pay out moneys only upon warrants, and that there appears upon his books one item of $600 paid out not upon a warrant. This, however, is the item of $600 moneys obtained from the librarian, the history of which the treasurer's books, his voucher from Culver, and the parol testimony of its disbursement to the workmen, fully show, and, in so showing, entirely exonerate the treasurer from any charge of misappropriation.

The findings and judgment of the court were in consonance with this review of the evidence, and the judgment and order appealed from are therefore affirmed.

We concur: Temple, J.; McFarland, J.